UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

BARRY'S AUTO BODY OF NY LLC,

Plaintiff,

-against-

ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, INC. and ALLSTATE INSURANCE COMPANY,

Defendants.

------------------------------------x

**MEMORANDUM & ORDER**
24-CV-1309 (EK)(LKE)
24-CV-4067 (EK)(LKE)
25-CV-3371 (EK)(LKE)

ERIC KOMITEE, United States District Judge:

Plaintiff Barry's Auto Body of NY LLC ("Barry's") repairs automobiles. Customers who bring their damaged vehicles to Barry's may assign it their automobile insurance claims. In the event an insurer refuses to pay the full amount of a claim, New York law allows Barry's to sue the insurer as an assignee.

In these three related cases, Barry's alleges that the defendant Allstate entities failed to pay the full amount owed on dozens of claims assigned to Barry's, and that the Allstate entities engaged in deceptive practices to deny full payment.[1] Barry's brings claims for deceptive business practices under New York General Business Law § 349 and breach of contract, invoking the Court's diversity jurisdiction.

[1] The two entities are Allstate Fire & Casualty Insurance Company, Inc. and Allstate Insurance Company (collectively, "Allstate").

Allstate now moves to dismiss the Section 349 claims and most of the breach of contract claims in all three cases. Because of the significantly overlapping claims and issues of law, the Court consolidates the cases.[2] The Court also converts the motions to dismiss some of the breach of contract claims to motions for summary judgment. For the reasons set forth below, Allstate's motions to dismiss are granted in part and denied in part. The Court defers a decision on the motions for summary judgment until after an amended complaint is filed and the Court receives additional briefing and materials.

**I. Background**

The following facts are drawn from the complaints and assumed true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[3] Much of what the complaints plead as fact consists of legal conclusions. Some of those legal conclusions are recited below to explain Barry's theory of the case. But we need not — and do not — credit them. *See*

---

[2] *See* Fed. R. Civ. P. 42(a) (courts may consolidate actions that "involve a common question of law or fact"). The Clerk of the Court is directed to (1) consolidate these actions into the first removed case, No. 24-CV-1309, and (2) mark Nos. 24-CV-4067 and 25-CV-3371 closed. All future filings are to be docketed in No. 24-CV-1309.

[3] Unless otherwise noted, when quoting judicial decisions this Order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

*Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022).

The complaints are substantially identical. Unless otherwise noted, all citations are to the operative complaint and briefing in 24-CV-1309. *See* Am. Compl. ("Compl."), ECF No. 28. For purposes of this Order, the insurance policies issued by each Allstate entity are also identical, so citations are to the policy issued by Allstate Fire & Casualty Insurance Company, Inc. *See* Allstate Auto Policy Form ACR257 ("Insurance Policy"), Ex. B, ECF No. 14-2.

**A. Allegations Against Allstate**

Barry's customers were in automobile accidents and either insured by Allstate or in an accident with an Allstate insured. Compl. ¶ 4. The customers insured by Allstate had insurance policies entitling them to "the cost to repair or replace [their automobile] . . . to its physical condition at the time of loss. . . ." Insurance Policy 42. The customers involved in accidents with an Allstate insured did not hold insurance policies with Allstate; instead, they signed agreements with Allstate under which Allstate accepted liability for the damage to their vehicles and agreed to pay for the necessary repairs. Compl. ¶ 4.

When the customers brought their vehicles to Barry's, they signed assignments giving Barry's their claims against Allstate "for any loss, injury or damage sustained . . . including but not limited to property damage to [their] vehicle." *Id.* ¶ 19.[4] The assignments gave Barry's the right to "enforce payment of the assigned claims by any means available by law" against Allstate. *Id.* ¶ 20. If Allstate failed to pay a portion of the repair cost, however, the assignments provided that the assignors would be indebted to Barry's for the deficiency amounts. *Id.* ¶ 19.

At some point, Allstate provided repair estimates to Barry's and the assignors that "used improper methods for calculating the number of hours of labor required to repair the Vehicles" and "set arbitrary price caps on the amount [Allstate] would pay per unit for: labor rates to repair the Vehicles, paint materials . . . and body shop materials." *Id.* ¶¶ 21-22. The complaint is notably vague on the subject of when Allstate provided these estimates, but the only fair inference is that it did so prior to Barry's performing the work at issue. (The complaint is also opaque as to whether some or all of the

---

[4] Barry's attaches copies of the purported assignments to each of its complaints. *See* ECF Nos. 28-1, 28-2; No. 24-CV-4067: ECF Nos. 29-1, 29-2; No. 25-CV-3371: ECF Nos. 26-1, 26-2.

individual assignors received these estimates, and whether and how they may have acted on them.)

Barry's also alleges that, before it began repair work, Allstate "misrepresented to the[ ] assignors that another repair shop would repair the Vehicles to their pre-accident condition for the amount in [Allstate's] Estimates." *Id.* ¶ 25. This representation was false, Barry's claims, because no other repair shop had ever inspected the vehicles at issue — much less offered a lower price — and because the other repair shops had the right under New York law to file a claim that exceeded Allstate's estimates. *Id.* Barry's goes on to allege (in conclusory fashion) that Allstate made misrepresentations to the assignors about Barry's as "an attempt to both 'steer' its insureds away from [Barry's] by pressuring them to use repair shop(s) recommended by Allstate, and to cover up for its artificially low estimates by creating the impression that [Barry's] is the cause of the deficiencies rather than [Allstate's] claims practices." *Id.* ¶ 51.

Despite having been informed of Allstate's allegedly insufficient estimates, Barry's went ahead and fully repaired each vehicle. *Id.* ¶ 28. Once repair was done, Allstate "failed to pay the [assignors] or [Barry's] for the full amount actually required . . . to restore the Vehicles to their pre-accident

condition." *Id.* ¶ 29. Allstate remitted the amount of its allegedly misleading estimate, but not the amount necessary to repair the vehicles to their pre-accident state. *Id.* ¶ 24.

**B. Procedural History**

On October 24, 2023, and February 16, 2024, Barry's filed complaints in what would become 24-CV-4067 and 24-CV-1309, respectively, in the Supreme Court of the State of New York, Richmond County. Allstate timely removed both cases. On June 16, 2025, Barry's filed the complaint in the case docketed as 25-CV-3371 in federal court.

In total, across all three complaints, Barry's brings 168 claims for breach of contract. These claims arise from the assignments from the customers who held insurance policies with Allstate (whom the complaint refers to as the "first-party assignors"). Barry's also brings 200 New York General Business Law ("GBL") § 349 claims — comprising the same 168 assignments underlying the breach of contract counts, plus thirty-two additional assignments from the customers that were in accidents with Allstate insureds (the so-called "third-party assignors").

Allstate has moved to dismiss the GBL claims (on the basis that Barry's fails to state a GBL claim) and most of the breach of contract claims (on the basis that the claims are either asserted against the wrong Allstate entity or time-

barred). In addition, the Court called for supplemental briefing on the issue of whether Barry's has plausibly pled Article III standing. Order, ECF No. 25.

## II. Legal Standard

***On the Standing Issue.*** "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of establishing subject matter jurisdiction. *Id.* One component of federal jurisdiction is standing to sue. In that regard, plaintiffs are obligated to "demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

The Supreme Court has opined that "each element" of federal jurisdiction "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). At the motion-to-dismiss stage, this means that "general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* In assessing the standing question, the Court takes all

uncontroverted facts in the complaint as true and draws any reasonable inferences therefrom in favor of the plaintiff. *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016).

***On the Merits.*** To overcome a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. The district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013).

At the same time, the Court need not "accept as true a legal conclusion couched as a factual allegation." *O'Neill v. Asat Trust Reg.*, 714 F.3d 659, 673 (2d Cir. 2013).

## III. Discussion

We address the jurisdictional question first and then turn to the merits.

### A. Barry's Has Not Adequately Pleaded Standing On the GBL Section 349 Claims

Section 349 of New York's General Business Law forbids "deceptive [acts] . . . or practices in the conduct of any

business, trade or commerce or in the furnishing of any service in this state." GBL § 349(a). Although Barry's brings only a single GBL count against each named Allstate entity, the counts actually each allege two distinct theories. One is "based on the injuries suffered by Barry's when [Allstate] failed to pay the cost of repair." Pl.'s Resp. to Order to Show Cause ("Pl.'s OSC Resp.") 1, ECF No. 29; Compl. ¶ 50. Barry's also asserts that it "is advancing its right to sue as assignee of the vehicle owners['] [GBL claims] . . . ." Pl.'s OSC Resp. 3; Compl. ¶ 51.

Before the merits of Barry's GBL claims can be considered, the Court must examine Barry's standing to sue. Although Barry's has, and Allstate does not question, Article III standing to bring its breach-of-contract claims, the Supreme Court's cases "confirm that a plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

1. Article III's Traceability Requirement

Federal courts have the power only to adjudicate "Cases" or "Controversies." U.S. Const. art. III, § 2. Consistent with this requirement, they may only entertain cases in which the plaintiff has standing to sue. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). A plaintiff has standing if

she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.*

Monetary harms do, of course, "readily qualify as concrete injuries under Article III." *TransUnion*, 594 U.S. at 425. Still, any monetary harm that Barry's alleges must be fairly traceable to Allstate's conduct. "The traceability requirement for Article III standing means that the plaintiff must demonstrate a causal nexus between the defendant's conduct and the injury." *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013). The amended complaints present the question: if Allstate advised Barry's how much it would pay for a given repair, and Barry's chose to proceed with the repair (notwithstanding that it believed Allstate's estimate to be too low), can Allstate's accurate estimate of its own payment fairly be said to have "caused" Barry's any injury?

As the D.C. Circuit has observed (in a suit against a governmental entity):

> Not to require that a plaintiff show that its particularized injury resulted from the government action at issue would effectively void the particularized injury requirement. After all, any plaintiff may allege an injury to its own interests if that injury need not be caused by any act of the defendant.

*Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 669 (D.C. Cir. 1996). In a case involving fraud or misrepresentation, this means that the alleged misrepresentation must — in some plausible fashion —be the cause of the alleged injury. Thus, "[f]or centuries, misrepresentation torts have required a showing of justifiable reliance and actual damages." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 998 (11th Cir. 2020).

2. Barry's Has Not Plausibly Alleged an Injury <u>Traceable to Allstate's Conduct</u>

Barry's has identified no causal nexus between Allstate's conduct and any injury — either to Barry's itself or to the assignors.

a. Claims *Assigned* to Barry's

The complaint alleges that, as to the assignors, Allstate "consistently and systematically provided lower estimates of the cost of repairs than what is actually the reasonable cost of repairing a given vehicle to its pre-loss condition." Compl. ¶ 47. This deceptive conduct "caused [the assignors] to owe money to [Barry's] for the deficiency amounts . . . which should have been paid by Allstate pursuant to the Policies." *Id.* ¶ 56.

But the complaint does not connect *how* Allstate's allegedly misleading estimate caused the assignors harm. While

the harm the complaint alleges — that those assignors ended up owing Barry's the excess above Allstate's estimate — may plausibly be described as injury, it is not an injury flowing from Allstate's estimate (or, for that matter, from Allstate's representation that other body shops would also do the work for that amount).

Thus, the complaint plausibly pleads only that the harm incurred by the assignors is a result of Allstate's breach of the insurance policy — harm that would exist irrespective of Allstate's misleading statements. Harm is not fairly traceable to a defendant's allegedly unlawful conduct where the injury results instead from other, independent conduct. *See California v. Texas*, 593 U.S. 659, 678 (2021). In the end, the allegedly misleading aspect of Allstate's conduct is doing no work. And "under our common-law tradition, there can be no recovery if the plaintiff is none the worse off for the misrepresentation, however flagrant it may have been." *Trichell*, 964 F.3d at 998.[5]

[5] The complaint suffers an additional problem in its effort to establish Barry's standing to pursue the 200 assigned claims: it treats the assignors as an undifferentiated whole in alleging that they heard, and were somehow misled by, the various categories of misrepresentation. But as the Supreme Court has directed, "standing is not dispensed in gross." *TransUnion*, 594 U.S. at 431. The Supreme Court reversed a lower court based on this imperative in *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) ("The Fifth Circuit also erred by treating the defendants, plaintiffs, and platforms each as a unified whole."). Instead, the *Murthy* majority held, the lower courts should

This analysis might differ if Barry's alleged that Allstate's misleading estimates induced the assignors to take some action — for example, to agree to purchase the insurance policy in the first place. But the complaint makes no such allegation. Its only nod toward inducement is the claim that Allstate's conduct "steered" customers to other repair shops. Compl. ¶ 51. *These* assignors, however, were not steered away from Barry's and so suffered no concrete injury from any steering effect.[6]

Barry's asserts that the Second Circuit allowed similar GBL claims to proceed in *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 127-28 (2d Cir. 2017). *See* Pl.'s OSC Resp. 7. But *Nick's* did not address Article III standing at all, and it is well-settled that "the existence of unaddressed jurisdictional defects has no precedential effect."

---

have "require[d] a certain threshold showing: namely, that a particular defendant pressured a particular platform to censor a particular topic *before* that platform suppressed a particular plaintiff's speech on that topic." *Id.*

[6] To be sure, individual reliance is not always necessary to establish Article III standing for a GBL claim. For example, under the "price premium" theory, a misrepresentation can inflate a product's prevailing market price for everyone, not just those who saw it. So, in many circumstances, a plaintiff can be injured — and recover — simply by paying that inflated price, even if she never encountered the misrepresentation herself. *See In re AXA Equitable Life Ins. Co. COI Litig.*, No. 16-CV-740, 2020 WL 4694172, at *10 (S.D.N.Y. Aug. 13, 2020). No causal mechanism like the "price premium" theory, however, is present here.

*Lewis v. Casey*, 518 U.S. 343, 352 n.2 (1996). In addition, *Nick's* was decided before *TransUnion*.

In calling for briefing on the standing issue, this Court explicitly flagged *Trichell*, which the Supreme Court cited favorably in *TransUnion*. 594 U.S. at 426. In response, Barry's argues that the assignors satisfy the test laid out there. Pl.'s Resp. to Feb. 23 O.S.C. 6. In *Trichell*, the plaintiff-debtors received collection letters that implied they could be sued for debts that were actually time-barred. 964 F.3d at 995. The plaintiffs alleged that, by sending the misleading letters, the defendant debt collection entities committed procedural violations of the Fair Debt Collection Practices Act. *Id.* The Eleventh Circuit held that the plaintiffs lacked standing because they did not claim to have been deceived. *Id.* at 1000-01. The two plaintiffs, the Circuit observed, "received debt-collection letters that they say were *misleading*, but neither of them claims to have been *misled*." *Id.* at 994 (emphasis in original).

Barry's argues that, unlike the *Trichell* plaintiffs, the assignors incurred monetary harm and therefore have a concrete injury. Pl.'s Resp. to Feb. 23 O.S.C. 6. As laid out above, however, the existence of a concrete injury is not enough, absent a plausible allegation that the injury is

traceable to Allstate’s misleading conduct. Barry’s has not plausibly alleged actual damages traceable to the misrepresentations.

b. Barry’s *Direct* Claims

Barry’s also brings GBL claims for its own injuries — those that it allegedly incurred itself because of Allstate’s misleading conduct. Specifically, Barry’s alleges that it “suffered direct monetary injuries as a result of Allstate’s deceptive conduct . . . which caused Allstate not to pay the . . . actual cost of the repairs that [Barry’s] performed on the Vehicles. . . .” Compl. ¶ 57. Barry’s also claims that it was harmed directly by Allstate’s attempts to steer away its customers. *Id.* ¶ 51.

Once again, the complaint never connects Allstate’s alleged deception — as opposed to its alleged underpayment — to Barry’s harm. As pled, it was the underpayment, not the misleading character of the estimate, that gave rise to Barry’s injury. Barry’s does not allege, for instance, that it began work on the assignors’ vehicles in reliance on the accuracy of Allstate’s estimates. In fact, the complaint indicates the opposite: that Barry’s began work despite *knowing* it would not

be fully repaid.[7] At oral argument, Barry's conceded that it was never misled by Allstate's conduct. *See* Tr. 20:3-4, ECF No. 32 ("We're not claiming that the shop has been misled."). This places Barry's direct claims on all fours with the problems articulated in *Trichell*, discussed above.

Indeed, the complaint leaves no doubt that Barry's own injuries were self-inflicted, to the extent they connect to Allstate's conduct at all. By its own allegations, Barry's knew what would happen if it repaired the vehicles but did so anyway. And a "self-inflicted injury, by definition, is not traceable to anyone but the plaintiff." *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 866 (6th Cir. 2020) (collecting cases). Here, as in *Buchholz*, the fact that Barry's is owed a deficiency "is so completely . . . [its own] fault as to break the causal chain." *Id.*

Barry's also alleges that Allstate *attempted* to steer away its customers, but it does not actually allege that any customers were steered away. Compl. ¶ 51. Accordingly, it has not pled a concrete injury on this theory, either.

---

[7] For example, the Complaint says that "[Allstate] also misrepresented to these Assignors that another repair shop would repair the Vehicles to their pre-accident condition for the amount in [Allstate's] Estimates." Compl. ¶ 25. This allegation would not make sense if the vehicles had already been repaired by Barry's.

Barry's GBL claims are therefore dismissed without prejudice for lack of standing.

**B. Breach of Contract Claims**

Allstate also moves to dismiss some breach of contract claims, on two bases. It argues that Barry's has asserted claims against the wrong Allstate underwriting entities and that other claims are time-barred. As discussed below, Allstate is correct that Barry's sued the wrong underwriting entities. But we cannot say, based on the face of the complaint, whether other claims are time-barred. The Court will therefore convert the motions to dismiss these claims to motions for summary judgment.

1. Other Underwriting Entities

First, Allstate moves to dismiss six claims brought in 25-CV-3371, arguing that Barry's sued Allstate underwriting entities that did not issue the assignors' policies.[8]

Generally speaking, "[t]here can be no breach of contract claim against a non-signatory to the contract." *Randall's Island Aquatic Leisure, LLC v. City of New York*, 92 A.D.3d 463, 463 (App. Div. 1st Dept. 2012). Allstate asserts that one claim should have been brought against Allstate New

[8] The six claims are from: Timothy Cummings (Claim No. 761610187), Timothy Cummings (Claim No. 772088928), Joanne Iacono (Claim No. 774718019), John McCarthy (Claim No. 779211945), Larisa Voloshina (Claim No. 761492230), and Stephanie Olenik (Claim No. 772752689).

Jersey Insurance Company and five claims should have been brought against Allstate Property and Casualty Company. Defs.' Mem. in Supp. of Mot. to Dismiss 17, 25-CV-3371, ECF No. 20-34.

Barry's concedes that it sued the wrong Allstate entities but nevertheless maintains that the corporate form should be disregarded because the "non-party entities utilize the same adjusters, management staff and employ the same claims processes complained of herein, regardless of which nominal entity issues the policy." Mem. of Law in Opp'n to Defs.' Mot. to Dismiss 22, 25-CV-3371 ("Pl.'s Br. 25-CV-3371"), ECF No. 21-10. These assertions, however, are not pled. "[A] party is not entitled to amend its complaint through statements made in motion papers." *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998). Even if they had been pled, they would not suffice to allege the "perpetration of fraud by means of the corporate vehicle" necessary under New York law to pierce the corporate veil. *Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 53 (2d Cir. 1984) (applying New York law). The six claims wrongly asserted against Allstate Fire & Casualty Insurance Company, Inc. and Allstate Insurance Company are therefore dismissed.

In the alternative, Barry's asks for leave to amend to substitute the proper defendants. Pl.'s Br. 25-CV-3371, at 23.

That request is granted. Barry's also asks to include in its amended complaint eleven first-party claims and four third-party claims that "accrued after June 16, 2024." *Id.* at 22. That request is granted as well. Barry's shall file its amended complaint within fourteen days of the filing date of this Order.

2. Statute of Limitations

Second, Allstate argues that the statute of limitations on some of the contract claims has expired. "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014).

Here, no viable statute of limitations defense appears on the face of the complaint itself. Allstate — the defendant — has submitted various documents in support of its statute of limitations argument, including letters sent to it by Barry's demanding additional payment. But we cannot say that these materials are integral to the complaint.[9] Nor are we prepared to

[9] A document is integral when "the complaint relies heavily upon its terms and effect" and "[m]erely mentioning a document in the complaint will not satisfy this standard." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir.

take judicial notice of their contents as true.[10] Even if we were, it is not clear that the documents answer the statute of limitations question definitively. The insurance policies require that any suit be brought "within one year after the date of loss." Insurance Policy 43. In New York, "generic language setting a contractual limitations period should be interpreted to start the clock not at the time of the accident itself but only once 'the right to bring an action exists.'" *Fabozzi v. Lexington Ins. Co.*, 601 F.3d 88, 91 (2d Cir. 2010) (quoting *Steen v. Niagara Fire Ins. Co.*, 89 N.Y. 315, 322-23 (1882)). The rule in insurance cases is "that the cause of action accrues when the loss insured against becomes due and payable under the policy." *Cont'l Cas. Co. v. Stronghold Ins. Co.*, 77 F.3d 16, 20 (2d Cir. 1996) (quoting *Steen*, 89 N.Y. at 324). This may have occurred in this case when Allstate "disclaimed coverage." *See Mercedes-Benz Fin. Servs. USA, LLC v. Allstate Ins. Co.*, 162 A.D.3d 1183, 1184 (App. Div. 3d Dept. 2018).

---

2016). The complaint does mention that Barry's sent demand letters to Allstate. Compl. ¶ 18. But, as explained below, it is unclear to what extent the breach of contract claims *depend* on whether the demand letters exist or on what they say.

[10] At the motion to dismiss stage, a court may take judicial notice of documents "to determine what statements they contained" but "not for the truth of the matters asserted." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (emphasis omitted).

Barry's demand letters do not, at first blush, reflect Allstate's decisive disclaimer of coverage. Instead, one could reasonably understand Barry's demand letters to constitute just one overture in the course of the negotiations New York requires. *See* 11 N.Y.C.R.R. § 216.7(b)(7) ("Negotiations must be conducted in good faith, with the basic goal of promptly arriving at an agreed price with the insured . . . ."). As a result, the Court will convert Allstate's motions to dismiss the claims it contends are time-barred into a motion for partial summary judgment. *See* Fed. R. Civ. P. 12(d).

The federal rules require that the parties be given "reasonable opportunity to present all the material that is pertinent to the motion." *See id.*; *see also Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (district court must "afford all parties the opportunity to present supporting material" if it "convert[s] the motion [to dismiss] to one for summary judgment"). That includes "an opportunity to take relevant discovery." *Hernandez v. Coffey*, 582 F.3d 303, 309 (2d Cir. 2009).

The parties are therefore directed to file, on or before November 12, 2026 any additional documentary material they believe will show the existence or non-existence of a genuine dispute of material fact with respect to the statute of

limitations issue. Each submission should be accompanied by a cover letter (not to exceed 750 words) summarizing the legal significance of that material. To the extent Barry's believes it needs further discovery, it shall also attach to the letter a declaration describing that additional discovery with specificity, and indicate why such discovery would likely raise an issue of material fact, as required by Federal Rule of Civil Procedure 56(d). *See Alphonse Hotel Corp. v. Nam Tran*, No. 13-CV-7859, 2014 WL 3801230, at *10-11 (S.D.N.Y. Aug. 1, 2014), *aff'd sub nom.*, 828 F.3d 146 (2d Cir. 2016).

Absent further order from this Court on the discovery issue, the summary judgment briefing shall be due as follows: Allstate to serve its motion and memorandum of law by December 11, 2026; Barry's to serve its opposition by January 8, 2027; Allstate to serve its reply by January 19, 2027.

## IV. Conclusion

For the foregoing reasons, Allstate's motion to dismiss is granted in part and denied in part. Counts III and IV, asserting GBL § 349 claims, are dismissed without prejudice. The six claims improperly asserted against Allstate Fire & Casualty Insurance Company, Inc. and Allstate Insurance Company are dismissed with prejudice. Allstate's motion to dismiss certain breach of contract claims as time-barred is converted

into a motion for summary judgment, and the parties shall file additional briefing and materials consistent with this Order. The Court grants Barry's fourteen days to amend its complaint.

SO ORDERED.

/s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated: September 28, 2026
Brooklyn, New York